UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| DEBORAH L. THOMPSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:09-CV-548 CAN |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On November 20, 2009, Plaintiff, Deborah L. Thompson ("Thompson"), filed her complaint in this Court. On May 5, 2010, Thompson filed an opening brief, in which she asks this Court to remand this matter to the Commissioner. On June 15, 2010, Defendant, Commissioner of Social Security ("Commissioner"), filed its response brief. On July 6, 2010, Thompson filed her reply brief. This Court now enters its ruling based upon the record of this case that includes the pleadings, the motions, the administrative record, briefs of the parties, and the arguments of counsel.

**I.    PROCEDURE**

On March 24, 2006, Thompson filed her application for Supplemental Security Income ("SSI"), alleging disability beginning January 5, 2006, due to breast cancer treatment. Thompson claims she is entitled to benefits pursuant to Title XVI of the Social Security Act ("SSA"). See 42 U.S.C. §§ 416(I), 423, 1383(c)(3). Thompson's application was initially denied on June 20, 2006 and again upon reconsideration on November 21, 2006.

1

On October 2, 2008, Thompson, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). On April 6, 2009, the ALJ denied Thompson's claim. The ALJ found that Thompson has not engaged in substantial gainful activity ("SGA") since March 24, 2006. Further, the ALJ found Thompson's lymphedema to be a severe impairment but found Thompson's constipation-predominant irritable bowel syndrome to be a non-severe impairment. However, the ALJ found that Thompson did not have any impairments that meet one of the listed impairments in 20 C.F.R. app.1, subpart P. § 404. The ALJ determined that Thompson has the residual functional capacity ("RFC") to perform the full range of light work. Based on Thompson's age, education, work experience, and RFC, the ALJ found that a significant number of jobs within the national economy existed that Thompson could perform. Therefore, the ALJ found that Thompson was not disabled.

On April 17, 2009, Thompson filed a request for review of this decision with the Appeals Council. On August 14, 2009, the Appeals Council denied review; and as a result, the ALJ's decision became the Commissioner's final decision. (Tr. 7-10). See 20 C.F.R. § 404.981, Fast v. Barnhart, 397 F.3d 468, 470 (7th Cir. 2005). Consequently, on November 20, 2009, Thompson filed a complaint in this Court seeking a review of the ALJ's decision. This Court may enter a ruling in this matter based on the parties' consent. See 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II. ANALYSIS

### A. Facts

At the time of the ALJ's decision, Thompson was 48 years old. She completed high school and previously worked as an unskilled fireworks maker/laborer. However, her limited

work experience cannot be considered past relevant work, as it falls outside the 15 year time frame.

Thompson alleges that she has been disabled since January 5, 2006, due to physical impairments stemming from breast cancer and its subsequent treatment, primarily lymphedema and fatigue. She also alleges chronic irritable bowel syndrome. In addition to her physical impairments, Thompson has been diagnosed with depression.

At the hearing, Thompson testified that the lymphedema of her right arm is a source of constant pain and overuse causes fluid to build up, which results in numbness. She estimates that she can lift 10 pounds. She also reports suffering from "major fatigue" and hypothyroidism, which she attributes to her cancer treatment. Thompson testified that she is able to care for herself and cook but stated that her family helps her with other household chores such as washing the dishes and vacuuming. She reports that she is able to drive to visit her mother and counts camping as a hobby.

1. Treating Physicians

Thompson was initially diagnosed with breast cancer in early 2006. In March of 2006, Thompson began the first of six rounds of chemotherapy. Despite the aggressive course of treatment, a lumpectomy revealed residual carcinoma and her lymph nodes were positive for metastatic disease.

Under the care of oncologist Dr. Kramer, Thompson underwent radiation therapy from September 18, 2006 through November 7, 2006. During this period, Dr. Kramer noted Thompson's obesity, irritable bowel syndrome, and tenderness as well as reduced range of motion in her right arm. On October 23, 2006, Dr. Kramer wrote a letter stating that Thompson

3

could be expected to suffer from symptoms related to her radiation treatment including lethargy, decreased mental acuity, skin reactions, and reduced range of motion in her right arm. He stated a belief that Thompson was suffering from depression, which "has yet to be managed." On December 8, 2006, Dr. Kramer noted improvement in Thompson's energy level but also noted that Thompson still felt "quite fatigued" and reported heaviness in her right arm. On June 19, 2007, Dr. Kramer noted that Thompson had heaviness in her right arm and fatigue. He found minor lymphedema and radiation fibrosis. Dr. Kramer recommended that Thompson "protect her arm from repetitive motion" and suggested she visit the lymphedema clinic, which she declined to do at that time.

On November 28, 2006, Dr. Mark A. Nelson formally diagnosed Thompson with constipation predominant IBS and prescribed medication. On March 13, 2007, Dr. Chil Kang diagnosed Thompson with chemotherapy-induced anemia, neutropenia, and thrombocytopenia. On November 27, 2007, Dr. Kang stated in a letter that Thompson continued to suffer from the above conditions.

2. <u>Non-Treating Physicians</u>

On May 30, 2005, Dr. William Shipley ("Dr. Shipley") a non-examining reviewer found Thompson to have no medically determinable mental impairments. On June 5, 2006, Dr. Ralph E. Inabit ("Dr. Inabit"), an Agency-selected doctor, found Thompson to have exertional dyspnea, some reduction in motor strength, and found to be suffering from side effects of chemotherapy, including "chronic fatigue."

B. <u>Standard of Review</u>

The standard of review for an ALJ's decision is whether it is supported by substantial

evidence and free of legal error. See 42 U.S.C. § 405(g); Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005); Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court is not to substitute its own opinion for that of the ALJ's or re-weigh the evidence, but the ALJ must build a logical bridge from the evidence to his conclusion. Haynes, 416 F.3d at 626; Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). This standard is deferential; however, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. Golembiewski, 322 F.3d at 915. Further, an ALJ's legal conclusions are reviewed *de novo*. Haynes, 416 F.3d at 626.

  C. Thompson's motion for summary judgment or remand

To be entitled to benefits under 42 U.S.C. §§ 423, 1321a, Thompson must establish that she was "disabled." See 42 U.S.C. § 423(a)(1)(D). The Social Security Act defines "disability" as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). The Social Security regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider whether: (1) the claimant is presently employed, (2) the claimant has a severe impairment or combination of impairments, (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity, (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work, and (5) the

claimant is unable to perform any other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920, Briscoe v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

If the ALJ finds that the claimant is disabled or not disabled at any step, the ALJ may make his determination without evaluating the remaining steps. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If there is an affirmative answer at either step three or step five, then there is a finding of disability. Briscoe, 425 F.3d at 352. At step three, if the impairment meets any of the severe impairments listed in the regulations, the impairment is acknowledged by the Commissioner. See 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. app.1, subpart P, § 404.

However, if the impairment is not so listed, the ALJ assesses the claimant's residual functional capacity, which in turn is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform work in society at step five. 20 C.F.R. § 404.1520(e). In steps one through four, the claimant bears the burden of proving disability, but the burden shifts to the Agency at step five to produce evidence of jobs existing in significant numbers that the claimant can perform, given her age, education, work experience, and residual functional capacity. Id.

Thompson raises objections to (1) the ALJ's assessment of her impairments, (2) the ALJ's credibility determination, (3) the ALJ's formulation of the RFC finding, (4) and the procedures followed at step five of the analysis. This court will address each of Thompson's arguments in turn.

    1.    <u>The ALJ improperly declined to evaluate Thompson's alleged mental impairment.</u>

Thompson contends that the ALJ erred by improperly dismissing her mental impairment

and by failing to perform the "special technique" to determine its limiting effects. This Court agrees.

The special technique is used to analyze whether a claimant has a medically determinable mental impairment and whether that impairment causes functional limitations. See Craft v. Astrue, 539 F.3d 668, 674-75 (7th Cir. 2008), 20 C.F.R. § 404.1520a(c). Specifically, the test requires an ALJ to individually rate the degree of functional limitation in each of the four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id. See also 20 C.F.R. § 404.1520a(e)(2).

Thompson asserts that the ALJ failed to properly evaluate her mental impairment with the special technique. In the immediate case, the ALJ did not follow the special technique because he found the record insufficient to support Thompson's claim of depression. Instead, the ALJ concluded that Thompson's mental impairment was "medically indeterminable." Specifically, the ALJ stated that Thompson "has alleged depression, but there is no significant medical evidence of this." In addition, the ALJ also opined that "there is no evidence that depression causes any limitations of work-related activities." Therefore, instead of determining the severity of Thompson's depression and then considering whether it causes any functional limitations, the ALJ bypassed this analysis entirely.

This Court has concerns with the ALJ's treatment of Thompson's mental impairment. In particular, this Court considers the ALJ's decision not to evaluate Thompson's depression at all to be not substantially supported or sufficiently articulated. Contrary to the ALJ's finding that there was no significant medical evidence of Thompson's depression, this Court notes that there is record evidence of Thompson's depression. See Tr. 215, 430, 459. Despite this, the ALJ

7

made no mention of Thompson's diagnosis or treatment, failing to explain his reasons for considering the same to be "no significant medical evidence."

As such, it appears that the ALJ failed to consider all the evidence regarding Thompson's mental impairment or, at least, failed to adequately discuss it. Consequently, this Court concludes that the ALJ's evaluation of Thompson's mental impairments is not supported by sufficient evidence in the record. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir. 2003) (An ALJ's opinion will be overturned if not supported by substantial evidence in the record). As a result, remand is necessary to afford a proper reevaluation of Thompson's mental impairment. On remand, the ALJ must either fortify his original finding with substantial evidence and adequate discussion or evaluate Thompson's alleged mental impairment consistent with the special technique. This Court offers no opinion regarding the severity of Thompson's alleged mental impairment or the resulting limiting effects. However, the ALJ cannot bypass all consideration of it by deeming all supportive evidence insignificant without any discussion.

> 2. The ALJ's credibility determination is not supported by substantial evidence.

Thompson next contends that the ALJ improperly evaluated her testimony regarding her credibility. Specifically, Thompson claims that the ALJ failed to consider any of her subjective symptoms.

Because an ALJ is in a special position where he can hear, see, and assess witnesses, an ALJ's credibility determinations are given special deference, and as a result, an ALJ's credibility determinations will only be overturned if they are patently wrong. Jens v. Barnhart, 347 F.3d 209, 213 (7th Cir. 2003); Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001). However,

Social Security Ruling 96-7p requires an ALJ to consider the entire case record and articulate specific reasons to support his credibility finding. Golembiewski v. Barnhart, 322 F.3d 912, 915 (7th Cir. 2003); Steele v. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002). While an ALJ is not required to provide a "complete written evaluation of every piece of testimony and evidence," an ALJ cannot simply state that an the individual's allegations have been considered or that the individual's allegations are not credible. Rice v. Barnhart, 384 F.3d 363, 370 (7th Cir. 2004); Golembiewski, 322 F.3d at 915; Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001); S.S.R. 96-7p. Also, the ALJ may not simply recite the factors that are described in the regulations for evaluating symptoms. Zurawski, 245 F.3d at 887; S.S.R. 96-7p. Nonetheless, "only if the trier of facts grounds his credibility finding in an observation or argument that is unreasonable or unsupported. . . can the finding be reversed." Prochaska v. Barhart, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted). Further, when an ALJ's determinations are based on objective factors rather than subjective considerations, such as the claimant's demeanor, there is greater freedom to review the ALJ's decision. Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

Thompson claims that the ALJ's credibility determination is not substantially supported. Specifically, Thompson states that the ALJ failed to consider the medical evidence that supported limitations beyond the RFC, namely pain in her right arm and fatigue. This Court agrees with Thompson's argument in the regard as well.

To begin, this Court notes that the ALJ's credibility determination offers little insight into the ALJ's analysis. To begin, the ALJ relies heavily on boilerplate language to support his finding that Thompson's testimony was not fully credible. Indeed, this boilerplate language constitutes one of the two paragraphs dedicated to the ALJ's credibility determination. The ALJ

9

has a duty to build a logical conclusion from the evidence to his determination and to articulate it. To this end, the ALJ's heavy reliance on boilerplate provisions is not sufficient to meet this requirement. In addition, this Court notes that the ALJ relied almost exclusively upon objective evidence. While the ALJ may discount Thompson's credibility with objective evidence alone, the law permits this Court greater latitude, in those situations, to assess and critique the ALJ's discussion of the evidence. For the reasons stated in more detail below, this Court finds the ALJ's discussion of the evidence to be deficient in this case.

First, the ALJ does not adequately address Thompson's subjective symptoms such as pain and fatigue. The ALJ finds that there was "no medical evidence" of "continuing limitations" other than lifting and carrying. However, Thompson's testimony of the record reveals Thompson's persistent complaints of pain associated with Thompson's arm. Despite this, the ALJ did not address the credibility of this testimony. Similarly, Thompson testified regarding the limiting effects of her chronic fatigue, but the ALJ similarly did not address the credibility of this testimony as well. Like Thompson's complaints of pain, the record evidences Thompson's reported feeling fatigue. Absent a discussion of the credibility of Thompson's testimony regarding the limiting effects of these symptoms, the ALJ's credibility determination is not sufficiently articulated.

Second, the ALJ's credibility determination regarding Thompson's depression is similarly underdeveloped. In the immediate case, the ALJ used his prior conclusion, that there was no significant medical evidence of depression, to discredit Thompson's testimony regarding the same. Having already concluded that the ALJ's discussion of the record evidence of depression to lack substantial support, this Court concludes that the ALJ can not use his faulty

10

analysis to bolster his credibility determination.  On remand, the ALJ must adequately evaluate whether Thompson's claims of pain, fatigue and depression are credible in light of the supporting evidence.

Third, the ALJ failed to articulate how Thompson's ability to complete household activities undermines her credibility.  In one sentence there is a passing reference to Thompson's ability to perform certain daily activities, but the ALJ does not conclude that they are inconsistent with Thompson's allegations of fatigue and pain.  It is feasible that Thompson's activities could be inconsistent with her claims.  However, the ALJ fails to explain the potential discrepancy.  Therefore, the ALJ did not articulate the reasoning behind his conclusion and therefore did not substantially support it.

In conclusion, the ALJ failed to articulate and support particularized credibility findings; and, as a result, this Court lacks a sufficient basis upon which to uphold the ALJ's decision.  See Zurawski, 245 F.3d at 888.  This Court does not suggest that the ALJ's credibility determination was incorrect, but only that greater clarity and elaboration are necessary to ensure a full and fair review of the evidence.  Id.  On remand, the ALJ must re-evaluate Thompson's complaints of pain, fatigue and depression with due regard to the full range of medical evidence and with sufficient articulation to show how the evidence was considered.

### 3. The ALJ's RFC is not substantially supported.

Thompson additionally argues that the ALJ's RFC determination is not substantially supported.  Specifically, Thompson argues that the RFC is deficient because the record supports greater limitations than the ALJ found.  Thompson contends that these limitations would have been evident if the ALJ had considered Thompson's impairments in combination with each

11

other.

As discussed above, this Court finds that the ALJ's assessment of Thompson's mental impairments and her credibility were inadequate. It follows, then, that the ALJ's RFC assessment is also flawed because the ALJ necessarily failed to include evidence of Thompson's mental impairments and the limiting effects articulated in Thompson's testimony. As such, remand is required so that the RFC can be properly formulated to include an evaluation of this evidence.

Further, this Court has serious concerns regarding the brevity of the ALJ's RFC assessment. The substantive discussion of the RFC constitutes only two paragraphs of the ALJ's decision, amounting to roughly half a page. This stands in stark contrast with the record evidence, which is over four hundred pages in length. While this Court respects that the ALJ need not discuss every piece of evidence, the brevity of the analysis strongly suggests that the ALJ either failed to adequately articulate and support his determinations or the ALJ failed to consider all the evidence. Neither is acceptable. See Indoranto v. Barhart, 374 F.3d 470, 474 (7th Cir. 2004) (While an ALJ need not discuss every piece of evidence, the ALJ must consider and evaluate all the record evidence, including evidence that is contrary to his conclusion). As such, remand is also necessary for a more thorough discussion of the record evidence.

    4. <u>The ALJ's reliance on the Medical-Vocational Guidelines was erroneous.</u>

Thompson asserts that the ALJ erroneously relied on the Medical Vocational Guidelines ("guidelines") to direct a finding of "not disabled" when he should have called upon a vocational expert ("VE").

At step five, the ALJ considers the claimant's RFC, age, education, and work experience

in conjunction with the guidelines. 20 C.F.R. Part 404, Subpart P, App. 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the guidelines direct a conclusion of either "disabled" or "not disabled." However, when the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has non-exertional limitations, the guidelines are to be used as a framework–unless there is a rule that directs either conclusion without considering the additional exertional and/or non-exertional limitations.

Thompson argues that the ALJ erroneously used the guidelines. Specifically, Thompson contends that she has non-exertional impairments, such as: fatigue, mental impairments, abdominal pain, that were wrongly excluded from the RFC analysis and which preclude reliance on the guidelines. This Court agrees. After the ALJ reevaluates the evidence regarding Thompson's non-exertional impairments for both severity and limiting effects, the ALJ must then re-determine whether reliance on the guidelines is appropriate or whether he must consult a vocational expert at steps four and five of the sequential disability analysis.

### III.  CONCLUSION

For the aforementioned reasons, this Court concludes the ALJ's determination regarding Thompson's alleged mental impairments was not supported by substantial evidence. Further, the ALJ's determination of Thompson's credibility is not supported by substantial evidence or sufficiently articulated. In addition, the ALJ's RFC finding is not substantially supported because it lacks a full development of the record and an evaluation of Thompson's non-exertional impairment. Finally, this Court concludes that the ALJ's reliance on the guidelines was improper due to the ALJ's insufficient evaluation of Thompson's non-exertional

impairments. Therefore, Thompson's motion for reverse or remand is **GRANTED**. [Doc. No. 17]. Accordingly, this Court **REMANDS** this case for proceedings consistent with this opinion pursuant to sentence four (4) of 42 U.S.C. § 405(g).

    **SO ORDERED**.

    Dated this 5th Day of August, 2010.

                                                S/Christopher A. Nuechterlein
                                                Christopher A. Nuechterlein
                                                United States Magistrate Judge